DARIUS PEARCE *versus* DANIEL SAVAGE *& als.*

*Several* releases by *joint* trustees will not bar a legal *joint* claim by the trustees against the person to whom such releases have been given.

Equity will not recognize a settlement of a trust estate made upon estimates without computation; but will require parties to produce their evidence and vouchers.

CASE IN EQUITY, heard on bill, answer and proofs.

The question between the parties was one *of fact,* and questions of law arose only incidentally.

The evidence is stated in the opinion.

*A. Hayden,* for complainant.

*J. Granger,* for respondents.

The opinion of the Court was drawn up by

CUTTING, J.—In the recent action at law, *Pearce* v. *Savage,* 45 Maine, 90, the documentary evidence then and now reported are identical.

The complainant claims title under a deed of mortgage from one *Winslow Bates* to *Benjamin D. Whitney* and *Joseph Richardson,* of March 3, 1834.

The tenants derive their title from a prior deed of mortgage from the same *Winslow Bates,* of March 26, 1831, to *Wooster Tuttle* and *Ezra Whitney,* executors under the will of *Elias Bates,* the father of the mortgager, to secure the faithful performance of his trust and agency, (to which he had been appointed by the mortgagees,) to collect and account for rents, to have the management of the real estate, &c. If the conditions of this mortgage have been fulfilled, the tenants have no equitable or legal title, otherwise they have both. This presents a question of fact, which, since the former decision, can be the only one in controversy between the parties.

The complainant, in order to show that the conditions of the prior mortgage have been performed, introduces the tes-

timony of *Winslow Bates*, who in substance swears that they were so performed, whose oath appears to be corroborated by the separate releases of the executors.

But the tenants deny the validity of the releases, and attempt to impeach the accuracy of the memory of *Bates*. The releases, which will be found reported in the former case, speak for themselves. They were not the joint production of the two executors, which, in legal contemplation, they should have been in order to bar a legal claim under the mortgage; for it will be perceived that the covenants in the mortgage are to them *jointly*, whereas the releases are from them *severally*. But, according to the testimony of Bates, elicited in cross-examination, the release from *Tuttle* was procured under peculiar circumstances. It was a settlement of *Bates'* agency during a period of eight years "*upon a jump*," and without the production of any account current. In the settlement of trust estates, equity will recognize no such practice, but will require the parties to produce their evidence and vouchers. It is contended by the tenants' counsel that the release was never legitimately executed or delivered, but years afterwards found by *Bates* among certain papers in the possession of the administrator of the estate of the late *Hon. Daniel T. Granger*, and for such purpose, as well as to contradict Bates, he introduces *Bates'* letter to *Granger*, dated September 4, 1843, some fourteen years after the date of the pretended release, in which Bates, among other things, says, — " As for Wooster Tuttle, previous to my departure from the East, (which was in October, 1839,) I was repeatedly urging him (Tuttle) to a settlement of our affairs, which he would not, or did not, consent to. I had been agent from 1831 to 1839, during all which time no settlement was ever had between us," &c. It is true, that the complainant's counsel attempts to reconcile the seeming disparity of *Bates*, as detailed by him in his deposition and letter, upon the hypothesis that the latter had reference to other matters. It may be so.

*Again*, it appears that *Tuttle* and *Whitney* assigned their

mortgage to one *Thomas G. Hathaway*, by deed, dated April 11, 1840, who subsequently foreclosed and entered into the actual possession of the disputed premises, under whom the tenants now claim. That, subsequent to this time and for a period of years afterwards, *Whitney* and *Richardson*, the second mortgagees, under whom the complainant now claims, were interested to ascertain the amount, if any, of the prior incumbrance. For that purpose, they employed Mr. *Granger* as their counsel, a person well acquainted with the parties, and of unimpeachable integrity. He lived in the immediate vicinity. Before the expiration of the foreclosure, he investigated the claims under the mortgage, satisfied himself, and so informed his clients, that their equity of redemption was of no value, in which opinion those clients acquiesced.

So the matter rested until 1855, when Mr. *Bates*, having returned from the west to his former residence in Eastport, and assumed the administration of his brother-in-law, *Thomas G. Hathaway's* estate, with no *selfish motives*, as he swears, procured a quitclaim deed from the second mortgagees to the complainant, for the consideration of two hundred dollars.

It has been urged with much force, by the tenant's counsel, that the conduct of *Bates* was unnatural and inconsistent with his official and social relations. That, if he really believed the first mortgage had been discharged, he would have purchased in the disputed title, either for himself or his widowed sister; instead of acting as the officious attorney of a stranger, without taking any interest himself in the speculation. Such conduct is the proper subject of comment, for it tends to impair the credibility of the complainant's principal witness.

*Besides*, the account settled in the Probate Court, in which *Bates* is charged nearly two thousand dollars, accruing under his agency, and mostly made out in his own handwriting; and his letter to his brother *Hamlet*, that when he left the State, in 1839, he had taken his share in his father's

estate with him, and had left his subsequent mortgagees to look out for themselves; and other circumstances disclosed in the evidence, almost too numerous to mention, go far to impair our confidence in the accuracy of Mr. *Bates'* recollection. In conclusion, when we take into consideration the lapse of time the tenants have been in possession since the foreclosure of the mortgage under which they claim — the long acquiescence of the party adversely interested — the circumstances under which the complainant procured his contested title — the decease of nearly all of the principal actors — the uncertainty, if not inconsistency, of most of the complainant's testimony, we are constrained to order this
*Bill dismissed with costs for respondents.*

Appleton, C. J., Davis, Kent, Dickerson and Barrows, JJ., concurred.